## UNITED STATES v. PACIFIC LIVE STOCK CO.

(District Court, D. Nevada. May 16, 1910.)

No. 1,199.

**1. PUBLIC LANDS (§ 21*)—UNLAWFUL INCLOSURE—CRIMINAL RESPONSIBILITY OF CORPORATIONS.**

After inclosure by a corporation of public domain, Act Cong. Feb. 25, 1885, c. 149, § 4, 23 Stat. 322 (U. S. Comp. St. 1901, p. 1525), which prescribed as punishment for unlawful inclosure a fine not exceeding $1,000 "and" imprisonment not exceeding one year, was amended (Act March 10, 1908, c. 75, 35 Stat. 40 [U. S. Comp. St. Supp. 1909, p. 570]) so as to provide for a fine "or" imprisonment, or both fine and imprisonment. *Held*, that a corporation cannot escape punishment on the theory that the act as amended operates retroactively as against it, and that punishment cannot be imposed under the original act because imprisonment is required as part of the punishment.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 28; Dec. Dig. § 21.*]

**2. PUBLIC LANDS (§ 21*)—UNLAWFUL INCLOSURE—FINE—EXCESSIVENESS.**

Under Act Cong. Feb. 25, 1885, c. 149, § 4, 23 Stat. 322 (U. S. Comp. St. 1901, p. 1525), which prescribes a fine or imprisonment, or both for unlawfully inclosing public domain, the maximum penalty should not be assessed against a corporation, and a fine of $500 is adequate, where it appears that the corporation's inclosure included about 2,695 acres, of which but 650 acres were public land, and where it appears that the inclosure was not solely intended to exclude settlers; the fence having been erected on the particular line thereof to save expense.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 28; Dec. Dig. § 21.*]

Indictment against the Pacific Live Stock Company for unlawfully inclosing public domain. Judgment of conviction.

Samuel Platt, U. S. Atty.

Edward F. Treadwell and W. E. F. Deal, for defendant.

FARRINGTON, District Judge. The defendant, a California corporation, was indicted in this court for a violation of that act of Congress which forbids unlawful inclosure of the public domain. After entering a plea of not guilty, trial was had, and the jury rendered a verdict of guilty. Defendant now moves an arrest of judgment. The act (Act Feb. 25, 1885, c. 149, § 4, 23 Stat. 322 [U. S. Comp. St. 1901, p. 1525]), as in force at the time of the offense, provided that any person violating any of its provisions shall be deemed guilty of a misdemeanor, and fined in a sum not exceeding $1,000, and imprisoned not exceeding one year. Subsequently the act was so amended (Act March 10, 1908, c. 75, 35 Stat. 40 [U. S. Comp. St. Supp. 1909, p. 570]) as to declare that any person guilty of such a misdemeanor shall be fined or imprisoned, or both fined and imprisoned, for each offense.

[1] It is urged that the act as amended is an ex post facto law as against the defendant, because it was passed after the commission of the offense charged, because it imposes a punishment where none

was imposed by the act under which the indictment was found, and that the court in fixing the punishment must be guided by the provisions of the act as it stood when the offense was committed; that the judgment must conform strictly to the statute, and impose both fine and imprisonment, otherwise it is void; consequently, as a corporation cannot be imprisoned, no valid judgment can be entered in this case against the defendant.

I am unable to yield my assent to this reasoning. In the first section of the act "all inclosures of any public lands * * * heretofore or to be hereafter made, erected or constructed by any person, party, association or corporation" are "declared to be unlawful, and the maintenance, erection, construction, or control of any such inclosure is hereby forbidden and prohibited."

The second section of the act provides for the institution of suits to restrain violations of the act, and for the destruction of such unlawful inclosures. In section 5 the President of the United States is authorized to take such measures as may be necessary to remove and destroy any such inclosures, and may employ the civil or military forces for that purpose.

When this act was passed, Congress had in mind the practice then so prevalent among Western stockmen of fencing large areas of public land, and thus excluding bona fide settlers.

Whether the unlawful inclosure be erected and maintained by a natural or an artificial person, it is equally unlawful, and the mischief occasioned thereby, which the act was designed to prevent, is the same, both in degree and kind, whether the offender be a corporation or an individual.

Obviously, there are certain crimes, such as bigamy and perjury, of which a corporation cannot be guilty; but the act here forbidden is one which can be committed by a corporation, and one which corporations by the express terms of the statute itself are prohibited from doing. I cannot find in the act any intention to exempt corporations from punishment for its violation.

The oleomargarine act of May 9, 1902 (32 Stats. at Large, § 6, p. 197 [U. S. Comp. St. Supp. 1909, p. 868]), requires wholesale dealers to keep certain books, and provides that any person violating any provision of that section shall, for each offense, be fined and imprisoned. Section 5 of the same act requires all process or renovated butter to be marked, and provides that any person, firm, or corporation violating any of the provisions of this section, on conviction thereof, shall be punished by fine or by imprisonment, or both, in the discretion of the court.

In construing section 6, the court, in United States v. Braun & Fitts (D. C.) 158 Fed. 456, cited by the defendant here, argues that section 5 applies in express terms to corporations, and authorizes punishment by fine or imprisonment, or bc h; whereas in section 6, punishment by imprisonment is required in all cases, and corporations are not mentioned; and, as it is impossible to imprison a corporation, and no sentence can be pronounced which does not conform strictly to the statute, section 6 is not applicable to corporations, and cor-

porations cannot be punished for violating any of its provisions. Later, this phase of the oleomargarine act was considered by the Supreme Court in United States v. Union Supply Co., 215 U. S. 50, 30 Sup. Ct. 15, 54 L. Ed. 87. The reasoning of the court in United States v. Braun & Fitts was there declared to be unsound, and the doctrine of the lower court, holding that a corporation could not be punished under section 6 of the act, was rejected. The rule was stated thus:

"And if we free our minds from the notion that criminal statutes must be construed by some artificial and conventional rule, the natural inference, when a statute prescribes two independent penalties, is that it means to inflict them so far as it can, and that, if one of them is impossible, it does not mean on that account to let the defendant escape."

Under the authority of the case last cited, I must overrule the motion in arrest of judgment.

[2] The evidence shows that defendant's inclosure included about 2,695 acres, of which but 650 acres, the land described in the indictment, was public land. This 650 acres consisted of some 15 distinct and separate parcels, many of which were triangular in shape. Outside the fence were a number of like-shaped tracts of land owned by the defendant. Obviously, the unlawful fence was not erected or maintained for the sole purpose of excluding settlers. It was less expensive to erect the fence where it was placed than to follow the section lines. While these facts do not excuse the offense, they may and should be considered in fixing the fine to be imposed.

In my opinion, the maximum penalty is not warranted by the evidence. The defendant will therefore be required to pay a fine of $500 and costs of suit.